1  Scott Alan Burroughs (SBN 235718)
   scott@donigerlawfirm.com
2  Frank R. Trechsel (SBN 312199)
   ftrechsel@donigerlawfirm.com
3  DONIGER / BURROUGHS
4  603 Rose Avenue
   Venice, California 90291
5  Telephone: (310) 590-1820
6
7  *Attorneys for Plaintiff*
   *Dr. Elliott McGucken*
8
9              **UNITED STATES DISTRICT COURT**
10            **CENTRAL DISTRICT OF CALIFORNIA**

11 | ELLIOT MCGUCKEN, | Case No. 2:23-cv-06753-JLS-SSC
12 | Plaintiff, | *Hon. Josephine L. Staton Presiding*
13 | v. | **PLAINTIFF'S OPPOSITION TO**
14 | VALNET, INC.; *et al.,* | **DEFENDANTS' MOTION TO**
   | | **DISMISS THE COMPLAINT;**
15 | Defendants. | **REQUEST FOR STAY PENDING**
   | | **INTERLOCUTORY APPEAL**
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.    Introduction  ........................................................................1

II.   Factual Background  .............................................................2

III.  Legal Standard  ...................................................................3

IV.   Argument  ...........................................................................4

    A. McGucken sufficiently pleads his claim for infringement .............4

        1.  McGucken owns the works at issue and has standing  .......4

        2.  McGucken pleads copying of the Subject Photographs .....4

    B. The Server Test should not excuse Valent's infringing conduct  ....4

        1.  The Server Test contravenes the language and policy
           Of the Act  .............................................................5

        2.  Most courts reject the Server Test ................................. 10

        3.  The Supreme Court further eroded the Server Test in
           *Aereo* ................................................................... 13

        4.  The Server Test was not intended to excuse this type of
           exploitation ....................................................... 14

    C. This issue should be certified for interlocutory appeal ............... 18

V.    Conclusion  ........................................................................ 21

1

## TABLE OF AUTHORITIES

2

Page(s)

Cases

3

4

*Am. Broad. Cos. v. Aereo*,
134 S.Ct. 2498 (2014) ........................................................ 5, 8, 13, 14

5

*Anderson v. Angelone*,
86 F.3d 932 (9th Cir. 1996) ................................................................. 3

6

*APL Microscopic, LLC v. United States*,
144 Fed. Cl. 489 (2019) .................................................................... 5, 6

7

*Balistreri v. Pacifica Police Dept.*,
901 F.2d 696 (9th Cir. 1988) ............................................................... 3

8

9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................ 3

10

*Bell v. Wilmott Storage Servs., LLC*,
12 F.4th 1065 ............................................................................... 7, 17

11

*Cahill v. Liberty Mut. Ins. Co.*,
80 F.3d 336 (9th Cir. 1996) ................................................................. 3

12

13

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010) ............................................................. 19

14

*Crown Awards, Inc. v. Discount Trophy & Co., Inc.*,
564 F. Supp. 2d 290 (S.D.N.Y. 2008) .................................................. 5

15

*Evox Prods., LLC v. Verizon Media, Inc.*,
2022 WL 17430309 (9th Cir. Dec. 6, 2022) ...................................... 17

16

17

*Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*,
499 U.S. 340 (1991) ............................................................................ 4

18

*Flava Works, Inc. v. Gunter*,
2011 WL 3876910 (N.D. Ill., 2011) .................................................. 12

19

20

*Free Speech Sys., LLC v. Menzel*,
390 F. Supp. 3d 1162 (N.D. Cal. 2019) ............................................. 15

21

*Goldman v. Breitbart News Network, LLC*,
302 F.Supp.3d 585 (SDNY 2018)....................................... 8, 10, 11, 15

22

23

*Hanagami v. Epic Games, Inc.*,
85 F.4th 931 (9th Cir. 2023) ............................................................. 13

24

*Hunley v. BuzzFeed, Inc.*,
No. 1:20-CV-08844-ALC, 2021 U.S. Dist. LEXIS 189420 (S.D.N.Y. 2021) ... 17, 18, 21

25

26

*Hunley v. Instagram, LLC*,
73 F.4th 1060 (9th Cir. 2023) ............................................................. 8

27

*In re Cement Antitrust Litigation* (MDL No. 296),
673 F.2d 1020 (9th Cir. 1981)................................................ 18, 19, 20

28

*Joe Hand Promotions, Inc. v. Griffith*,
   2023 WL 4752375 (E.D. Tenn. July 25, 2023) ...................................... 9

*Joe Hand Promotions, Inc. v. Thatcher*,
   2021 WL 2627383 (E.D. Ky. Mar. 29, 2021) ........................................ 9

*John v. United States*,
   247 F.3d 1032 (9th Cir. 2001) (*en banc* ............................................. 19

*Koehler v. Bank of Bermuda*,
   101 F.3d 863 (2d Cir. 1996) ................................................................ 20

*Langere v. Verizon Wireless Servs., LLC*,
   983 F.3d 1115 (9th Cir. 2020) ............................................................ 18

*Leader's Institute, LLC v. Jackson*,
   2017 WL 5629514 ........................................................................ 6, 12

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) .............................................................. 3

*MAI Sys. Corp. v. Peak Computer, Inc.*,
   991 F.2d 511 (9th Cir.1993) ................................................................. 9

*Matthew Bender & Co., Inc. v. West Pub. Co.*,
   240 F.3d 116 (2d Cir. 2001) ................................................................. 5

*McGucken v. Newsweek LLC*,
   2022 WL 836786 (S.D.N.Y. Mar. 21, 2022) ................................... 10, 11

*Milbert v. Bison Labs.*,
   260 F.2d 431 (3d Cir. 1958) ............................................................... 20

*Nicklen v. Sinclair Broad. Grp., Inc.*,
   551 F. Supp. 3d 188 (SDNY 2021) ............................................... 6, 7, 8

*Perfect 10, Inc. v. Google, Inc.*,
   416 F. Supp. 2d 828 (C.D. Cal. 2006) ............................................ Passim

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ..................................... 2, 16, 15, 7

*Perfect 10, Inc. v. Giganews, Inc.*,
   847 F.3d 657 (9th Cir. 2017) ............................................................... 4

*Perfect 10, Inc. v. Google, Inc.*,
   653 F.3d 976 (9th Cir. 2011) ............................................................. 17

*Reese v. BP Expl. (Alaska) Inc.*,
   643 F.3d 681 (9th Cir. 2011) ............................................................. 20

*SA Music, LLC v. Amazon.com, Inc.*,
   2020 WL 4501518 (W.D. Wash. Aug. 5, 2020) ................................... 20

*Sierra Foothills Pub. Util. Dist. v. Clarendon Am. Ins.*,
   2006 WL 2085244 (E.D. Cal. July 25, 2006) ..................................... 19

*Silvers v. Sony Pictures Ent., Inc.*,
   402 F.3d 881 (9th Cir. 2005) ........................................................ 20, 21

*Starz Ent., LLC v. MGM Domestic Television Distribution, LLC*,
   2021 WL 945237 (C.D. Cal. Feb. 22, 2021) ....................................... 20

*Syntek Semiconductor Co. v. Microchip Tech. Inc.*,
  307 F.3d 775 (9th Cir.2002).................................................................... 21
*Unicolors, Inc. v. H&M Hennes & Mauritz LP*,
  2016 WL 10646311 (C.D. Cal. 2016)...................................................... 3
*Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*,
  595 U.S. 178, (2022) ................................................................................ 5
*Villarreal v. Caremark LLC*,
  85 F. Supp. 3d 1063 (D. Ariz. 2015)....................................................... 19

Statutes

17 U.S.C. § 101 ............................................................................... Passim
17 U.S.C. § 106 ........................................................................ 5, 7, 13, 14
17 U.S.C. § 106(1) ...................................................................................... 5
17 U.S.C. § 106(1), (3), (5) ........................................................................ 5
17 U.S.C. § 106(3) ...................................................................................... 5
17 U.S.C. § 106(3) and (5) ....................................................................... 14
17 U.S.C. § 106(5) ................................................................................. 1, 6
17 U.S.C. § 501(a) ...................................................................................... 4
17 U.S.C. §§ 106(1) and (5) ....................................................................... 6
28 U.S.C. § 1291 ...................................................................................... 18
28 U.S.C. § 1292(b) ..................................................................... 18, 19, 20

Other Authorities

3 Federal Procedure, Lawyers Edition § 3:212 (2010) ........................... 19
Does the Internet Need the "Server Rule"?,
  32 Colum. J. L. & Arts 417, 430 (2019) ................................................. 6
H.R. Rep. No. 94–1476.......................................................................... 8, 10

## I.    INTRODUCTION

Valnet, Inc. operates a series of websites, one of which displayed 36 original photographs by award-winning photographer Dr. Elliot McGucken without notice to him or his consent. Section 106 of the Copyright Act (the "Act") grants copyright holders the exclusive public display right for copyrighted works such as photographs and videos. 17 U.S.C. § 106(5). To deny Defendant's Motion, this Court need only answer one question:

- Did Valnet violate McGucken's exclusive display right by displaying McGucken's photographs to the public on their website?

The answer is an unequivocal "yes." Valnet, though, asserts that its display of McGucken's photographs does not violate McGucken's exclusive display right because its display of his photographs was achieved by "embedding" McGucken's photographs after sourcing them from Instagram's server and linking those photographs to Valnet's site, where they were displayed in full to Valnet's viewers. But this interpretation ignores the ordinary meaning of the statutory definition of "display," which is "to show a copy of it, either directly or" by "any other device or process." 17 U.S.C. § 101. For that reason, Courts inside this Circuit have limited the application of this argument. Courts outside this Circuit have repeatedly rejected it, concluding, from a simple review of the statutory text, that the display right is violated when a work is displayed on a website without the copyright holder's consent, regardless of how that display is accomplished.

Valnet cannot dispute it displayed McGucken's photographs or failed to obtain his consent. Instead, its defense hinges entirely on the fact it displayed the work via copying code from Instagram's server. The "Server Test" defense, as it is known, originated from a 16-year-old court decision, which is an epoch in internet years, that stated that "where the image remains on third-party's server and is not

fixed in the memory of the infringer's computer . . . embedding is not display."[1]
While the Server Test may still be applicable law in this Circuit, it has only been
applied in limited contexts. It has not been applied in this context – a general
interest publication purloining the photographs from Instagram – and this Court
should refrain from extending the Server Test and deny Valnet's motion.[2] If it is
not inclined to do so, it should stay the case after issuing its ruling so that the
parties can address this crucial issue before the Ninth Circuit.

## II.   FACTUAL BACKGROUND

Dr. McGucken is an acclaimed photographer who created, owns, and
registered the 36 photographs at issue ("Subject Photographs"). Dkt. 1
("Complaint") ¶¶8-9. Valnet owns a series of click-bait websites, including
www.thetravel.com ("thetravel.com"), that publish low-cost content primarily to
draw viewer traffic and sell advertising. Complaint ¶11. Valnet has repeatedly been
sued for copyright infringement for exploiting photography without the artist's
consent.[3]

Valnet displays photographs in at least two ways on its commercial sites,
such as thetravel.com. It either directly uploads photography to its site after
copying it from the photographer responsible for creating the work. Or it visits a
photographer's social media account, such as McGucken's here, copies the

---

[1] *Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1159, 2507 (9th Cir. 2007)
("*Perfect 10 I*").

[2] Valnet moves to dismiss Plaintiff's claims for direct and secondary infringement
and Plaintiff contests here only the challenge to the claims for direct infringement.

[3] Valnet has been sued over 40 times since 2020 in both the Central District of
California and Southern District of New York and has over 24 pending
infringement cases. See e.g., *Michael Grecco Productions, Inc. v. Valnet, Inc. et
al.*, 2:23-cv-04086-WLH-E (C.A.C.D. May 25, 2023; *Steven Hirsch, v. Valnet Inc.*,
1:23-cv-11202-DLC (S.D.N.Y. December 27, 2023), *NY Daily Newswire, LLC, v.
Valnet Inc.*, 1:23-cv-11199-JGLC (S.D.N.Y. December 27, 2023), *Peterson v.
Valnet Inc.,* 1:23-cv-11246-AT (S.D.N.Y. December 28, 2023*), Zlozower v. Valnet
Inc.,* 1:23-cv-11247-JMF (S.D.N.Y. December 28, 2023*), Moon v. Valnet Inc.,*
1:23-cv-11259-LPE (S.D.N.Y. December 29, 2023).

embedding code necessary to display the work, and then adds that code to its website so Valnet's viewers see the work displayed on Valnet's site. Complaint ¶11, 17-22, Ex. A Dkt. 1-1. Each method results in the photographs being displayed to the viewer on Valnet's website. Id. Valnet does not, and cannot, dispute it accessed and displayed McGucken's photography without his consent. Thus, the Complaint sufficiently pleads infringement.

### III.   LEGAL STANDARD

To defeat a Rule 12(b)(6) motion, the complaint need only provide enough factual detail to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint's allegations must be taken as true, and all reasonable inferences must be drawn in the plaintiff's favor. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996). And the court generally may not consider materials other than facts alleged in, and documents made part of, the complaint. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). Finally, dismissal is proper only where a complaint fails to plead either a cognizable legal theory or sufficient facts under a cognizable legal theory. *Unicolors, Inc. v. H&M Hennes & Mauritz LP*, No. CV 16-02322-AB (SKX), 2016 WL 10646311, at *2 (C.D. Cal. 2016), citing, *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend… [] unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (internal citations and quotations omitted).[4]

---

[4] McGucken disagrees that leave to amend should be denied, but, nevertheless, seeks instead to appeal the granting of Valnet's motion rather than amend.

## IV.   ARGUMENT

### A.      McGucken sufficiently pleads his claim for infringement

To allege a *prima facie* case for copyright infringement, a plaintiff needs to assert (1) ownership of a valid copyright and (2) copying of constituent parts of the work that are original. See *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.* 499 U.S. 340, 361 (1991). McGucken does so.

### 1.      McGucken owns the works at issue and has standing

The Complaint alleges McGucken owns and registered the Subject Photographs. Complaint ¶¶8-9. McGucken need not plead more at this stage.

### 2.      McGucken pleads copying of the Subject Photographs

As the creator of the Subject Photographs, McGucken enjoys exclusive rights under the Act for said photography, including whether and which parties may "display" and "distribute" his work to the public. Under 17 U.S.C. § 501(a), "[a]nyone who violates any of the exclusive rights of the copyright owner ... is an infringer of the copyright."  McGucken pled that Valnet distributed and displayed McGucken's photography to the public, violating the statute's express language. Complaint ¶¶11-14, 17-22. And that Valnet accessed McGucken's social media account and copied the code necessary to display his photography on its sites.[5] McGucken's claims are sufficiently pled, and Valnet's Motion should be denied.

### B.      The Server Test should not excuse Valnet's infringing conduct

It is undisputed that Valnet "displayed" McGucken's photography on its site and "distributed" it to viewers, but seasoned infringer Valnet seeks to rely on the judicially created Server Test to escape liability. However, the Server Test

---

[5] This copying easily satisfies the so-called "volition" requirement, which, "in this context does not really mean an act of willing or choosing or an act of deciding"; instead, "it simply stands for the unremarkable proposition that proximate causation historically underlines copyright infringement liability no less than other torts." See *Perfect 10, Inc. v. Giganews, Inc*., 847 F.3d 657, 666 (9th Cir. 2017) (internal citations omitted).

contravenes the Act's text and should not deny McGucken his statutorily guaranteed 17 U.S.C. § 106 rights. Further, none of the cases cited by Valnet apply the Server Test directly to a media company embedding images from Instagram to display and distribute the full infringed image to the viewing public. This Court should resist Valnet's urging to extend a test that has already been found wanting and conflicts with the Act's text.

### 1.    The Server Test contravenes the language and policy of the Act

The Act's text and the Server Test conflict. When interpreting the Act, "we follow the text of the statute." *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 595 U.S. 178, 184, (2022) (citation omitted). And "courts often apply a statute's highly general language in light of the statute's basic purposes." *Am. Broad. Cos. v. Aereo,* 134 S.Ct. 2498, 2511 (2014)("*Aereo*") (applying the Act). The Act's "significant purpose" is to "encourage the origination of creative works by attaching enforceable rights to them." *Crown Awards, Inc. v. Discount Trophy & Co., Inc.*, 564 F. Supp. 2d 290, 295 (S.D.N.Y. 2008), quoting *Matthew Bender & Co., Inc. v. West Pub. Co.*, 240 F.3d 116, 122 (2d Cir. 2001) (citation omitted).

17 U.S.C. § 106, the statute at issue, sets forth the exclusive rights an artist holds in connection with their work and includes the rights to "display," "reproduce," and "distribute" the work. 17 U.S.C. § 106(1), (3), (5). 17 U.S.C. § 106(1) grants a copyright owner the exclusive right to "reproduce the copyrighted work in copied," and 17 U.S.C. § 106(3) grants the exclusive rights "to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending."[6] To "display" means "to show a copy of [a work], either directly or by means of a film, slide, television

---

[6] The "act of transmitting the webpage—and the Work therein—to a user would infringe on this [distribution] right." *APL Microscopic, LLC v. United States*, 144 Fed. Cl. 489, 498 (2019).

image, **or any other device or process**[.]" 17 U.S.C. § 106(5), § 101 (emphasis added). Elsewhere in the Act, to "display" means "to communicate it by **any device or process** whereby images or sounds are received beyond the place from which they are sent." 17 U.S.C. § 101 (emphasis added).

The Act's use of "any device or process" necessarily includes showing a copy of a work through a computer within the statutory definition of "display." Indeed, "each unauthorized showing of a Work through a computer infringes on the owner's public display right. Other courts that have considered this issue have reached similar conclusions." *APL Microscopic,* 144 Fed. Cl. at 498. So, here, "each time a user viewed [Valnet's] webpage," McGucken's "copyrighted Work was displayed on the user's computer. Consequently, each of these displays constituted a separate infringement on [McGucken's] right of public display under § 106(5)[.]" *Id*., at 499. Indeed, by "instructing users' web browsers to display" McGucken's content upon accessing Valnet's website, Valnet "transmit[ed] ... a display of [McGucken's] work ... to the public." ."); *The Leader's Institute, LLC v. Jackson*, 2017 WL 5629514, at*10 (NDTX, 2017)("*Leader's Institute*") (citation omitted). Valnet's exploitation of McGucken's photography meets the expansive statutory definition of "reproduce," "distribute, and "display."

The Server Test fails because its definition of "display" improperly requires a "reproduction" as part of a "display" and ignores the "distribution" right. Crucially, the "display" and "reproduction" rights are *separate* rights. Compare 17 U.S.C. §§ 106(1) and (5). But "under [the Server Test] no display is possible unless the alleged infringer has also stored a copy of the work on the infringer's computer, mak[ing] the display right merely a subset of the reproduction right." *Nicklen v. Sinclair Broad. Grp., Inc.,* 551 F. Supp. 3d 188, 195 (SDNY 2021)("*Nicklen*"), citing Jane C. Ginsburg & Luke Ali Budiardjo, Embedding Content or Interring Copyright: Does the Internet Need the "Server Rule"?, 32 Colum. J. L. & Arts 417, 430 (2019) (explaining that the server rule "convert[s] the

display right into an atrophied appendage of the reproduction right" and thereby "ignores Congress's endeavor to ensure that the full 'bundle' of exclusive rights will address evolving modes of exploitation of works"). Section 106 does not state the display right is *only* infringed when the reproduction right is also infringed but only that a display is required. There would thus be no need to separately state a "display" right if a "display" could only occur after a "reproduction."

But, under the Server Test, an infringer can arguably *only* "display an image" when it uses "a computer to fill a computer screen with a copy of the photographic image **fixed in the computer's memory**."[7] *Nicklen*, at 194–95 (emphasis added), quoting *Perfect 10 I,* 508 F.3d at 1160. In *Perfect 10 I*, the Court wrote that a "computer owner shows a copy 'by means of a ... device or process' when the owner uses the computer to fill the computer screen with the photographic image **stored on that computer**, or by communicating the **stored image** electronically to another person's computer." *Perfect 10, I*, 508 F.3d at 1160 (emphasis added), quoting 17 U.S.C. § 101. The fundamental error is that the "stored image" requirement is not in the Act's text and runs *contra* to said text.

A site infringes when it embeds an image's code to give "the address of the image to the user's browser," and the browser "interacts with the [third-party] computer that stores the infringing image." *Nicklen*, at 195. Under the Server Test, though, Valnet seeks to avoid liability for infringement because "the image remains on a third-party's server and is not fixed in the memory of the infringer's computer" and is thus arguably not a "display." *Id*. But this conclusion "is contrary to the text and legislative history of the Copyright Act." Id. at 195. The Act defines

---

[7]  By removing the language "fixed in the computer's memory" from the definition of "display," the definition would become: "a person displays a photographic image by using a computer to fill a computer screen with a copy of the photographic image[,]" which would make Valnet's use infringing. *Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1072-73. This is consistent with *Aereo* and the rest of the country's approach to embedding.

1   to display as "to show a copy of" a work, 17 U.S.C. § 101, not "**to make** and then

2   show a copy of the copyrighted work." *Id*. (emphasis added).

3          The Act also states a display can be accomplished "by any other device or

4   process," which would include the embedding or code-copying process by which

5   Valnet displayed McGucken's photography. 17 U.S.C. § 101; *Nicklen*, at 196,

6   citing, e.g., *Aereo,*134 S.Ct. at 2509 (holding that, despite technological

7   complexity concerning the "behind-the-scenes" delivery of images, the defendant

8   violated the exclusive right to "show [an audiovisual work's] images in any

9   sequence," because "whether Aereo transmits from the same or separate copies, it

10   ... shows the same images and makes audible the same sound"). This precedent

11   conflicts with the Ninth Circuit's ruling in *Hunley v. Instagram, LLC,* which stated

12   that the "application of the Server Test depends on the method used for displaying

13   a photo—not the context in which the photo is displayed." 73 F.4th 1060, 1071

14   (9th Cir. 2023)("*Hunley*"). The Act and the Supreme Court favor McGucken.

15          An infringer who displays an artist's work without consent must be liable

16   even if it did not *also* make a copy. Indeed, "several distinct parts of the Act, []

17   contemplate[] infringers who would not be in possession of copies—for example in

18   Section 110(5)(A) which exempts "small commercial establishments whose

19   proprietors merely bring onto their premises standard radio or television equipment

20   and turn it on for their customer's enjoyment" from liability. *Goldman v. Breitbart

21   News Network, LLC,* 302 F.Supp.3d 585 (SDNY 2018)("*Goldman*"), quoting H.R.

22   Rep. No. 94–1476 at 87 (1976). That these "establishments require an exemption,

23   despite the fact that to turn on the radio or television is not to make or store a copy,

24   is strong evidence that a copy need not be made in order to display an image." *Id*.

25   Indeed, if one were to use their phone to film that week's NFL game and

26   simultaneously broadcast it over the internet to the world, that would be an

27

28

infringement even though the phone holder never possessed a copy.[8]  Yet, that is what the Server Test would require for infringement liability.

While a "reproduction" is not required to violate the display right, even if it were, the Server Test still conflicts with the Act, which states a "copy" can be "fixed in any method now known or later developed, and from which the work can be **perceived,** reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. §101. McGucken's photographs can be perceived on thetravel.com.

The Server Test also misinterprets the Act's definition of a "copy." In *Perfect 10 II,* the Court held that an "image stored in the computer is the "copy" of the work for purposes of copyright law. *Perfect 10 II,* 508 F.3d 1146, 1160, quoting *MAI Sys. Corp. v. Peak Computer, Inc*., 991 F.2d 511, 517–18 (9th Cir.1993). However, *MAI* addressed copying of software programs and, in that context, found that a "copy" was made when the program was transferred from one computer to another computer's memory. *MAI Sys*., at 518. That case quotes 17 U.S.C. §101 to conclude that such a transfer is "fixed" in a manner that is "sufficiently permanent or stable to permit it to be **perceived**, reproduced, or otherwise communicated for a period of more than transitory duration." *Id.* While that definition may be accurate in the software context, it does not preclude finding that the display of a photograph on a website is also "fixed" and thus a copy. Indeed, a visitor to thetravel.com would view photographs that were "sufficiently permanent or stable" for them to be "**perceived**" or "otherwise communicated" for a "period of more than transitory duration." 17 U.S.C. § 101. In other words, under *MAI Sys*.'s definition, upon which the Server Test is predicated, the display of

---

[8] Indeed, Courts regularly find infringement under these facts, such as in cases where bars and restaurants "livestream" events, which does not require making a copy. See *Joe Hand Promotions, Inc. v. Griffith*, No. 3:20-CV-382, 2023 WL 4752375, at *6 (E.D. Tenn. July 25, 2023) citing *Joe Hand Promotions, Inc. v. Thatcher*, No. 5:18-cv-0647, 2021 WL 2627383, at *2 (E.D. Ky. Mar. 29, 2021).

photography on a website would be sufficiently "fixed" to be a "copy" under the Act. Valnet displayed and distributed the Subject Photographs on thetravel.com so that any visitor would immediately perceive the images upon arrival.

For these reasons, the Server Test is not "adequately grounded in the text of the Copyright Act. It, therefore, does not and should not control the outcome here." *Goldman,* at 596.

### 2.    Most courts reject the Server Test

The Server Test has been heavily criticized and rejected outside the Ninth Circuit. And no Court has endorsed it in this context. Courts reject the Server Test because "such a test may be 'contrary to the text and legislative history of the Copyright Act[.]'" *McGucken v. Newsweek LLC*, No. 19 CIV. 9617 (KPF), 2022 WL 836786, at *6 (S.D.N.Y. Mar. 21, 2022), citing *Goldman*, at 591, *Nicklen*, at 195.

In *Newsweek,* Newsweek magazine did exactly as Valnet did here, embedding a McGucken photograph on its commercial site via embedding code. *Id.* The Court agreed with the assertion, made *supra,* that the Act defines "display" as "to show a copy of" a work, 17 U.S.C. § 101, and not "**to make** and then show a copy of the copyrighted work." *Id*., quoting *Nicklen*, at 195 (emphasis added).

The Court also found that "in considering the display right, Congress cast a very wide net, intending to include "[e]ach and every method by which the images ... comprising a ... display are picked up and conveyed," assuming that they reach the public. *Id*., quoting H.R. Rep. 94-1476, 47, 64 (1976). Thus, "display" would "include the projection of an image on a screen or other surface by any method, the transmission of an image by electronic or other means, and the showing of an image on a cathode ray tube, or similar viewing apparatus connected with any sort of information storage and retrieval system." *Id*., citing *id*. Indeed, an infringement of the display right could occur "if the image were transmitted by any method (by closed or open circuit television, for example, or by a computer system) from one

place to members of the public elsewhere." *Id*., citing *id*. at 80. This controls here – Valnet has displayed McGucken's photography by transmitting said works to members of the public elsewhere.

The *Newsweek* Court concluded the Server Test improperly strips an artist of their rights, holding that a "photographer who promotes his work on Instagram ... surrenders control over how, when, and by whom their work is subsequently shown — reducing the display right, effectively, to the limited right of first publication that the Copyright Act of 1976 rejects." *McGucken*, 2022 WL 836786, at *6, citing *Nicklen*, at 196. And "it cannot be that the Copyright Act grants authors an exclusive right to display their work publicly only if that public is not online." *Id*., quoting *Nicklen*, at 196. Therefore, Valnet, as the company that "embedded the Photograph in the Article" did "display" McGucken's photography in violation of the Act. *Id*.

In *Goldman,* the Court considered a claim by a website like Valnet's that had displayed a photograph of athlete Tom Brady by displaying the work via coded "instructions" for the viewer to access a third-party server on which the photo resided. *Id*. at 593. The Court rejected the Server Test because these "instructions" resulted in the "seamless presentation of the Brady Photo" on the defendant's website. *Id*. The Court noted it was "skeptical that *Perfect 10* correctly interprets the display right of the Copyright Act" and that the "Court finds no indication in the text or legislative history of the Act that possessing a copy of an infringing image is a prerequisite to displaying it." *Id,* at 595.

Likewise, in *Leader's Institute,* the infringer claimed that the Server Test allowed them to display the plaintiff's copyrighted works because they did not reproduce them on their server. The Court rejected this argument, finding that by "framing the defendant's copyrighted works, the plaintiffs impermissibly displayed the works to the public." *Leader's Institute,* at *10. It distinguished *Perfect 10 I* factually and held that "[U]nlike Google, [plaintiffs' website] did not merely

provide a link by which users could access [defendant's] content but instead displayed [defendant's] content as if it were its own." *Id*. at *11. It further stated: "[T]o the extent *Perfect 10* makes actual possession of a copy a necessary condition to violating a copyright owner's exclusive right to display the copyrighted works, the Court respectfully disagrees with the Ninth Circuit…The text of the Copyright Act does not make actual possession of a work a prerequisite for infringement." *Id*. And to "display a work publicly, a person need only transmit or communicate a display to the public." *Id*. Again, the "person need not possess the display." *Id*.

In another case, *Flava Works*, the court considered a series of videos displayed by the embedding process. It rejected the Server Test: "To the extent that *Perfect 10* can be read to stand for the proposition that inline linking can never cause a display of images or videos that would give rise to a claim of direct copyright infringement, we respectfully disagree. In our view, a website's servers need not actually store a copy of a work in order to 'display' it." *Flava Works, Inc. v. Gunter*, 2011 WL 3876910, at *4 (N.D. Ill., 2011) vacated on other grounds, 689 F.3d 754 (7th Cir. 2012). So owing, the fact "that the majority of the videos displayed on myVidster reside on a third-party server does not mean that myVidster users are not causing a "display" to be made by bookmarking those videos. Id. Because the "display of a video" can be initiated on the infringer's site without the need to navigate to a "separate source site to view them[,]" the works are displayed. *Id*. Valnet displayed McGucken's photographs similarly; visitors to thetravel.com saw McGucken's photographs without traveling to a third-party site.

Even the Ninth Circuit's recent *Hanagami* decision, which addressed the online display of a choreographed dance sequence by the alleged infringer, proceeded despite there being no evidence that the alleged infringer first saved to its server a copy of the YouTube video featuring the "five-minute dance performed to the song "How Long" by singer Charlie Puth" before displaying the

unauthorized copy of that dance online. *Hanagami v. Epic Games, Inc*., 85 F.4th 931, 936 (9th Cir. 2023). Display does not require reproduction.[9]

### 3.   The Supreme Court further eroded the Server Test in *Aereo*

The Supreme Court in *Aereo* rejected the notion that the Act permits a violation of the exclusive right of public display by specific "behind-the-scenes ways" of delivering content to the public. Under its rationale, the Server Test improperly relies on "invisible" machinations: "First, this test is based on what happens at the technological-level as users browse the web, and thus reflects the reality of how content actually travels over the internet before it is shown on users' computers." *Perfect 10 v. Google, Inc*., 416 F. Supp. 2d 828, 839 (C.D. Cal. 2006), *aff'd in part, rev'd in part and remanded sub nom. Perfect 10, Inc. v. Amazon.com, Inc*., 487 F.3d 701 (9th Cir. 2007), *amended and superseded on reh'g*, 508 F.3d 1146 (9th Cir. 2007*), and aff'd in part, rev'd in part and remanded sub nom. Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146 (9th Cir. 2007) ("*Perfect 10 II*"). In *Aereo,* the Supreme rejected the argument that a copyright infringer can evade liability by relying on the technical process underlying the violation of the 17 U.S.C. § 106 rights. This reasoning, which rejects the distinction between two different technological means, both of which accomplish the distribution of a copyrighted work to a viewer, applies with equal – and perhaps greater – force here: "This difference means nothing to the subscriber. It means nothing to the broadcaster. We do not see how this single difference, invisible to subscriber and broadcaster alike, could transform a system that is for all practical purposes a traditional cable system into a 'copy shop that provides patrons with a library card.'" *Aereo*, 134 S.Ct. at 2507.

---

[9] The leading treatise also rejects the Server Test, noting that the transmission of infringing material "so that they may be read by electronic means" is infringing "by reason of the display right." Nimmer on Copyright § 8.20.

The same can be said here – thetravel.com viewers see the photography on the website, and the "invisible" way the works are displayed (either by direct upload or embedded code) remains unknown and irrelevant to the viewer. But the Server Test relies on this "invisible" manner. Indeed, it defines "display," incongruously, as sending code via the internet: "From a technological perspective, one could define "display" as the act of serving content over the web—i.e., physically sending ones and zeroes over the internet to the user's browser." *Perfect 10 II,* 416 F. Supp. 2d at 839. This code-sending would be, not a basis to avoid liability, but a violation of the separate "distribution" right. Compare 17 U.S.C. § 106(3) and (5). The Supreme Court did "not see how the fact that Aereo transmits via personal copies of programs could make a difference." *Aereo,* 134 S.Ct. at 2509. Because the Act applies to transmissions "by means of any device or process," and transmitting "using user-specific copies is a "process" of transmitting a performance, it matters not how the work is actually transmitted."[10] Id. Indeed, whether Valnet "transmits from the same or separate copies, it performs the same work; it shows the same images." Thus, when Valent displays the work via embedding code, it nevertheless displays it for purposes of 17 U.S.C. 106. *Id.*

### 4.    The Server Test was not intended to excuse this type of exploitation

Even if the Court concludes it must apply the Server Test, it need not conclude the Server Test allows Valnet's unauthorized display in this context. Valnet cites no case where the Court applied the Server Test to a media company defendant accused of infringement through embedding. Indeed, there are diminishingly few cases that apply the "server test outside of the context of search engines" and virtually no cases that apply the Server Test to "the wholesale posting

---

[10]  This is particularly true here because it is Valnet (unlike Aereo), that is "choosing the content which will be displayed, that they would indeed be displaying" *Aereo*, 134 S.Ct. at 2514 (Scalia, J., dissenting).

of copyrighted material on a news site." *Free Speech Sys., LLC v. Menzel*, 390 F.
Supp. 3d 1162, 1172 (N.D. Cal. 2019). On the contrary, most cases have "refused
to apply the Perfect 10 server test outside of that context." *Id*., citing, e.g.,
*Goldman,* at 592 (S.D.N.Y. 2018); *Leader's Institute,* at *11.

The *Perfect 10 I* analysis was "heavily informed by two factors," including
"the fact that the defendant operated a search engine[.]" *Goldman*, at 595. And it
was noted in *Perfect 10 II* that the Server Test "will merely preclude **search
engines** from being held directly liable for in-line linking and or framing infringing
contents stored on third-party websites." Goldman, at 595 (emphasis by Court),
citing *Perfect 10 II*, 416 F.Supp.2d at 844 (emphasis added). It went on: "**Merely
to index the web so that users can more readily find the information they seek**
should not constitute direct infringement[.]" *Goldman,* at 595–96 (emphasis by
Court), citing *Id*. (emphasis added). On appeal, the Ninth Circuit began its
statement of the case by saying, "we consider a copyright owner's efforts to stop an
**Internet search engine** from facilitating access to infringing images." *Id*. at 596
(emphasis by Court), citing *Perfect 10 I*, 508 F.3d at 1154.

Per the above, the Server Test should be cabined for use in the search-engine
context. *Nicklen*, at 195, citing *Goldman,* at 595 (distinguishing *Perfect 10 I* on
these grounds). There is no search engine here, and McGucken's photography
awaits "[Valnet] readers whether they click the image or not," so *Perfect 10*'s test
is "a poor fit for this case." *Id*.

Even if the Court were to expand the Sever Test beyond search engines,
*Perfect 10, I* should also be limited to cases "where the copyrighted images were
displayed only if a user clicked on a link." *Nicklen*, at 195, citing *Goldman,* at 595
(distinguishing *Perfect 10 I* on these grounds). When a user "open[s] up a favorite
blog or website to find a full color image awaiting the user, whether he or she
asked for it, looked for it, clicked on it, or not," the Ninth Circuit's approach is
inapposite. See id. Thus, the Server Test should be limited to situations where the

user of the site clicks on a link to access the entire image elsewhere, not, as here, the presentment of the whole picture on the infringer's site. Indeed, in *Perfect 10 II*, the district court concluded that users who view the full-size images "after clicking on one of the thumbnails" are "engaged in a direct connection with third-party websites, which are themselves responsible for transferring content." *Perfect 10 II*, 416 F.Supp.2d at 843.

A distinction between websites embedding a thumbnail image and link versus the entire embedded image is critical. In *Perfect 10 I*, "Google's search engine provided a service whereby the user navigated from webpage to webpage, with Google's assistance. This is manifestly not the same as opening up a favorite blog or website to find a full-color image awaiting the user, whether they asked for it, looked for it, clicked on it, or not. Both the nature of Google Search Engine, as compared to the defendant websites, and the volitional act taken by users of the services, provide a sharp contrast to the facts at hand." *Goldman*, at 596.

In *Perfect 10 I*, Google did not "display infringing images but instead provided links for users to access sites that displayed infringing images." *Leader's Institute,* at *11, citing *Perfect 10 I*, 508 F.3d at 1160–61. In that case, "the user was essentially navigating to an infringing website to view Perfect 10's photos. The same is not true of users who visited the accused [Valnet] websites. Upon visiting one of the [Valnet] sites, a user would necessarily see [McGucken's] content." Id. Unlike Google, Valnet "did not merely provide a link by which users could access [McGucken's] content but instead displayed [McGucken's] content as if it were its own. *Id*. (citation omitted). Valnet's viewers were presented with 36 of McGucken's full photographs. They were not required to "click" any link or thumbnail and were thus not responsible for directly connecting with any third-party site, such as Instagram. This case is manifestly the same as opening a website to find McGucken's images awaiting the user and is different from Google's use of the images in *Perfect 10 I*. Valnet is thus liable.

Valnet relies heavily on the easily distinguishable *Hunley* to support its application of the Server Test in this context. In *Hunley,* plaintiffs sued Instagram for secondary liability claims of infringement itself and not the directly infringing media companies *Time* and *Buzzfeed*. Valnet is a **direct** infringer due to its display and distribution of McGucken's photographs. While the Court in *Hunley* indicated that the Server Test has been applied outside the search engine context, it has not applied the Server Test in the context of a media website such as Valnet. *Hunley,* at 1071, citing, *Bell*, 12 F.4th 1065 (applying Server Test to storage-service website); *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 978 (9th Cir. 2011)(applying Server Test to Google's blog service "Blogger"); *Evox Prods., LLC v. Verizon Media, Inc.*, No. 21-56046, 2022 WL 17430309, at *1–2 (9th Cir. Dec. 6, 2022) (unpublished)(apply Server Test to online bulletin boards). Valnet is not a search engine, storage service, or blog but a commercial media company.

The *Hunley* Court found that if *BuzzFeed* and *Time* were not liable for direct infringement for displaying the content at issue, then the plaintiffs' claim of infringement based on secondary liability against Instagram also failed. *Hunley,* at 1071. Valnet argues that it is similarly situated and that it, too, should not be held liable for direct infringement. But, the defendant in *Hunley* was a social media platform, Instagram, and not a website publisher. Further, the claims at issue were for secondary liability – for allowing *Buzzfeed* and *Time* to display the works – and not for direct liability, which accrues when a work is displayed.

Moreover, *BuzzFeed* and *Time* were **not** parties to the *Hunley* case. When plaintiff Hunley sued Buzzfeed in the Southern District of New York, she prevailed at the motion to dismiss stage. Thus, the determination that Hunley could not have established the necessary underlying direct infringement to support her claim against Instagram is wrong. *Hunley v. BuzzFeed, Inc.*, No. 1:20-CV-08844-ALC, 2021 U.S. Dist. LEXIS 189420, (S.D.N.Y. 2021)- See Dkts. 86, 88. Even if

*Hunley* does not limit the Server Test to search engines, it does not establish that it must be applied to media websites like Valnet.

Finally, even the *Hunley* panel appeared to question the Server Test, noting that they were bound by it but also seeming to invite a request for *en banc* review. See *Hunley,* at 1072. "Even if we thought, in retrospect, that *Perfect 10* created some inconsistencies with other provisions of the Copyright Act, we are not free to overrule *Perfect 10* outside of an *en banc* proceeding unless there has been a change in the statute or an intervening Supreme Court decision." *Hunley,* at 1076, citing *Langere v. Verizon Wireless Servs., LLC*, 983 F.3d 1115, 1121 (9th Cir. 2020).

The *Hunley* Court invited a petition for *en banc* review three times in its decision, and indeed, plaintiffs did petition for *en banc* review that remains pending. The *Hunley* panel wrote, "[w]e cannot foreclose the possibility that some future panel may conclude that there are ways to display a copy other than to store it on a server." *Id*. Here, Valnet displayed McGucken's photographs, which would be infringement in any Circuit but the Ninth. The Server Test should not be expanded to include Valnet's exploitation of McGucken's photographs in its commercial content.

### C. This issue should be certified for interlocutory appeal

If the Court is not inclined to deny this motion, it is respectfully submitted that the Court stay the case and certify the issue for interlocutory appeal. Generally, appeals courts have jurisdiction over "appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. However, 28 U.S.C. § 1292(b) provides an exception, stating that "litigants can bring an immediate appeal of a non-final order upon the consent of both the district court and the court of appeals." *In re Cement Antitrust Litigation* (MDL No. 296), 673 F.2d 1020, 1025-26 (9th Cir. 1981). An interlocutory appeal aims to "facilitate disposition of the action by getting a final decision on a controlling legal issue sooner, rather than

later," to "save the courts and the litigants unnecessary trouble and expense." *John v. United States*, 247 F.3d 1032, 1051 (9th Cir. 2001) (*en banc*) (Rymer, J., special statement).

Certification for interlocutory appeal is proper when the order (1) "involves a controlling question of law"; (2) "as to which there is a substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *Villarreal v. Caremark LLC*, 85 F. Supp. 3d 1063, 1067 (D. Ariz. 2015). Here, as fully set forth above, there is an important, controlling question of law – the viability and applicability of the Server Test - that has manifested substantial differences in opinion.

A controlling question of law arises when the "resolution of the issue on appeal could materially affect the outcome of the litigation in the district court." *In re Cement*, 673 F.2d at 1026. An issue need *not* be dispositive to be controlling. *Sierra Foothills Pub. Util. Dist. v. Clarendon Am. Ins*., No. CV F 05-0736 AWI SMS (NEWDJ), 2006 WL 2085244, at *2 (E.D. Cal. July 25, 2006). As the U.S. Copyright Office has stated, "[i]n the digital age, few questions are as central to copyright jurisprudence as whether and how the creative works of authors may be accessed and disseminated on the Internet." U.S. COPYRIGHT OFFICE, THE MAKING AVAILABLE RIGHT IN THE UNITED STATES (Feb. 2016), Executive Summary, p. 1

To determine if a "substantial ground for difference of opinion" exists under § 1292(b), courts must examine to what extent the controlling law is unclear. Courts traditionally will find that a substantial ground for difference of opinion exists where "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Couch v. Telescope Inc*., 611 F.3d 629, 633 (9th Cir. 2010), citing 3 Federal Procedure,

1  Lawyers Edition § 3:212 (2010) (footnotes omitted). Here, novel and difficult

2  questions are presented, which raise a severe Circuit split in which the Ninth

3  Circuit is an outlier. Indeed, defendants must file cases outside this Circuit to find

4  relief against Valnet. See, e.g., *Steven Hirsch, v. Valnet Inc.*, 1:23-cv-11202-DLC

5  (S.D.N.Y. December 27, 2023), *Peterson v. Valnet Inc.,* 1:23-cv-11246-AT

6  (S.D.N.Y. December 28, 2023)*.* Artists in California should not be denied the

7  rights that an artist in New York or elsewhere possesses.

8        Courts often link the materially advancing litigation requirement "to

9  whether an issue of law is 'controlling' in that the court should consider the effect

10  of reversal by the court of appeals on the management of the case." *SA Music, LLC*

11  *v. Amazon.com, Inc.,* No. 2:20-CV-00105-BAT, 2020 WL 4501518, at *5 (W.D.

12  Wash. Aug. 5, 2020), citing, *In re Cement Antitrust Litig*., 673 F.2 at 1026. An

13  interlocutory appeal need not have a final, dispositive effect on the litigation; it is

14  enough that it "may materially advance" the litigation. *Reese v. BP Expl. (Alaska)*

15  *Inc*., 643 F.3d 681, 688 (9th Cir. 2011) (holding that the potential that a reversal

16  could remove a defendant and several claims from the case satisfied the material

17  advancement element). "The use of § 1292(b) is reserved for those cases where an

18  intermediate appeal may avoid protracted litigation." *Koehler v. Bank of Bermuda*,

19  101 F.3d 863, 865 (2d Cir. 1996), citing *Milbert v. Bison Labs*., 260 F.2d 431, 433-

20  35 (3d Cir. 1958).

21        The viability of the Server Test is a controlling and purely legal matter that

22  does not "turn on complicated or disputed facts." *Starz Ent., LLC v. MGM*

23  *Domestic Television Distribution, LLC*, No. CV 20-4085-DMG (KSX), 2021 WL

24  945237, at *2 (C.D. Cal. Feb. 22, 2021)(citation omitted). The issue is

25  "controlling" in that the viability of the claims depends on its resolution." *Id*.

26  (citation omitted).

27        Further, the Server Test creates a Circuit split, which is "particularly

28  troublesome in the realm of copyright." *Silvers v. Sony Pictures Ent., Inc.,* 402

F.3d 881, 890 (9th Cir. 2005). The Ninth Circuit has stated, "[c]ongressional intent to have national uniformity in copyright laws is clear." *Id.,* citing, *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir.2002). Currently, the Server Test creates uncertainty and disrupts national uniformity. McGucken's ability to enforce his exclusive right of display in California is far less than his ability to do so in New York or elsewhere.

As stated *supra,* The Ninth Circuit panel in *Hunley* referred to an *en banc* review of this 16-year-old precedent. See *Hunley,* at 1071. Therefore, interlocutory review is appropriate, and this Court should consider staying its decision on this Motion to allow for interlocutory review of the issues by the Ninth Circuit and potentially beyond.

## V.        Conclusion

The Act grants McGucken the exclusive rights, and Valnet violated those rights. Thus, the motion should be denied, or, in the alternative, the case should be stayed after the ruling on this motion, and the case certified for an interlocutory appeal.

Respectfully submitted,

Dated: December 29, 2023        By:    */s/ Scott Alan Burroughs*
Scott Alan Burroughs, Esq.
Frank R. Trechsel, Esq.
DONIGER / BURROUGHS
*Attorneys for Plaintiff*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## <u>L.R. 11-6.2. Certificate of Compliance</u>

The undersigned certifies that this memorandum of points and authorities complies with the type-volume limitation of L.R. 11-6.1. This certification is made relying on the word count of the word-processing system used to prepare the document.

The undersigned, counsel of record for Plaintiff, certifies that this brief contains **6,999** words, which complies with the word limit of L.R. 11-6.

Dated: December 29, 2023           By:          */s/ Scott Alan Burroughs*
                                                 Scott Alan Burroughs, Esq.
                                                 Frank R. Trechsel, Esq.
                                                 DONIGER / BURROUGHS
                                                 *Attorneys for Plaintiff*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS